NOT DESIGNATED FOR PUBLICATION

No. 128,167

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

LOUIS CARL OLIVER,
*Appellant.*

MEMORANDUM OPINION

Appeal from Shawnee District Court; JASON E. GEIER, judge. Submitted without oral argument. Opinion filed July 10, 2026. Vacated and remanded with directions.

*Andrew J. McGowan*, of Kansas Appellate Defender Office, for appellant.

*Carolyn A. Smith*, assistant deputy district attorney, *Michael F. Kagay*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., ATCHESON and CLINE, JJ.

PER CURIAM: Louis Oliver pleaded no contest to two crimes and was sentenced to 120 months in prison. He appeals, claiming the district court relied on an incorrect criminal-history score when determining his presumptive sentence under the Kansas Sentencing Guidelines. More specifically, he argues that the court erroneously classified his previous violation of a Salt Lake City municipal battery ordinance as a person offense. After reviewing the ordinance in question, we agree with Oliver that the Salt Lake City ordinance is broader than the Kansas battery statute, as the relevant Kansas provision criminalizes contact effected in a rude, insulting, or angry manner—a limitation

1

the ordinance does not include. Thus, Kansas Supreme Court caselaw directs that the laws are not comparable within the meaning of our sentencing laws. We therefore vacate the district court's judgment and remand for resentencing, classifying the Salt Lake City ordinance violation as a nonperson offense.

FACTUAL AND PROCEDURAL BACKGROUND

Oliver pleaded no contest to two counts of attempted kidnapping in 2023. The presentencing-investigation report calculated Oliver's criminal-history score as B, based on 24 convictions and adjudications dating from 1988. Oliver objected to the report's criminal-history calculation, claiming six of the convictions and adjudications listed were incorrect. Oliver later withdrew his objections to some of the challenged convictions and adjudications, and the State conceded that it could not prove two others. This left only one conviction at issue—a 1992 conviction for misdemeanor battery in violation of a Salt Lake City, Utah, municipal ordinance.

Both parties agreed that if this 1992 conviction were scored as a nonperson misdemeanor, Oliver's criminal-history score would drop from B to C. This difference in calculation would reduce the duration of Oliver's presumptive sentence by over half—from 128, 120, or 114 months to 60, 57, or 53 months. See K.S.A. 21-5301(c)(1); K.S.A. 21-5408(c)(1); K.S.A. 21-6804(a). The State and Oliver provided their respective arguments for why his 1992 conviction should be scored as either a person or nonperson misdemeanor. Following the parties' arguments, the court took the matter under advisement and continued the hearing for sentencing.

At sentencing, the district court ruled that the Salt Lake City conviction should be scored as a person offense. To reach this conclusion, the court compared the language of the Salt Lake City battery ordinance and the Kansas battery statute. The court found that the ordinance was narrower than the Kansas statute because the ordinance required

2

willful conduct, while the Kansas statute includes culpability for reckless conduct. The court also noted that the two battery provisions use different terms—Salt Lake City's ordinance requires "force or violence upon the person of another," while Kansas' statute requires "bodily harm to another person" or "physical contact with another person when done in a rude, insulting, or angry manner." Looking to Black's Law Dictionary for definitions of the terms used, the court concluded that "violence, which is defined as physical force accompanied by fury, and outrage is definitely comparable, while not the exact words, comparable to physical contact with another person when done in a rude, insulting, or angry manner." The court thus held that the Salt Lake City battery ordinance "is a comparable offense and is narrower to, or identical to, the Kansas battery statute" and scored the 1992 misdemeanor as a person offense.

The court then sentenced Oliver to 120 months in prison on the first count—the midrange sentence under the Guidelines—and a concurrent 32 months in prison on the second count, followed by 24 months of postrelease supervision.

DISCUSSION

On appeal, Oliver renews his argument that his 1992 conviction should be scored as a nonperson misdemeanor because the Salt Lake City ordinance prohibiting battery is broader than the Kansas battery statute. This argument requires us to interpret and apply the Kansas Sentencing Guidelines and the Salt Lake City municipal code—matters over which our review is unlimited. See *State v. Samuels*, 313 Kan. 876, 880, 492 P.3d 404 (2021); *State v. Keel*, 302 Kan. 560, 571-72, 357 P.3d 251 (2015).

The Guidelines use a combination of a person's criminal history and the severity level of the crime of conviction to determine the presumptive sentencing range for that crime. See K.S.A. 21-6804 (providing sentencing grid for nondrug crimes). A person's criminal history for sentencing purposes generally includes any previous felony and

3

misdemeanor convictions. See K.S.A. 21-6810(c). These convictions are further classified as "person" or "nonperson" crimes, with person crimes resulting in a more severe criminal-history score. See K.S.A. 21-6804.

For over 30 years, Kansas law has defined crimes committed in this state as person or nonperson offenses. But other states do not use this same framework. To bridge this difference, Kansas courts follow two steps to classify out-of-state crimes for criminal-history purposes. See K.S.A. 21-6811(e)(2)-(3).

- We first assess whether the crime is a felony or misdemeanor, and then we determine whether Kansas law classifies the out-of-state crime as a person or nonperson offense. K.S.A. 21-6811(e)(2), (3). If the crime is a felony in the state of conviction, it is treated as a felony in Kansas. K.S.A. 21-6811(e)(2)(A). (The parties here agree that Oliver's violation of the Salt Lake City ordinance was a misdemeanor offense.)

- We next determine whether the out-of-state crime is a person or nonperson offense. For misdemeanors, this requires an assessment as to whether there are any "comparable offenses" under Kansas law. K.S.A. 21-6811(e)(3)(A). Out-of-state crimes that are comparable to Kansas person crimes are categorized as person offenses. Other crimes, including those that are not comparable to any Kansas crimes, are classified as nonperson offenses. K.S.A. 21-6811(e)(3)(A).

Though the Kansas Legislature has provided a different framework for felony convictions, Kansas courts continue to use the comparability analysis discussed in *State v. Wetrich*, 307 Kan. 552, 412 P.3d 984 (2018), to determine whether an out-of-state misdemeanor should be classified as a person or nonperson offense. See *State v. Hasbrouck*, 62 Kan. App. 2d 50, 52, 506 P.3d 924, *rev. denied* 316 Kan. 761 (2022). Under the *Wetrich* framework, an out-of-state offense is comparable to a Kansas crime if

the elements of the out-of-state crime are "identical to, or narrower than, the elements of the Kansas crime to which it is being referenced." 307 Kan. at 562. This means that if an element of the out-of-state crime is broader than any element of the Kansas crime, the crimes are not comparable. *State v. Obregon*, 309 Kan. 1267, 1271, 444 P.3d 331 (2019) (citing *Wetrich*, 307 Kan. 552, Syl. ¶ 3). Within the context of Oliver's case, this means that if any aspect of the ordinance is broader than its Kansas counterpart, Oliver's violation of the Salt Lake City ordinance must be classified as a nonperson offense for criminal-history purposes.

Kansas courts assess a person's criminal-history score using the law in effect at the time the defendant committed the crime of conviction. K.S.A. 21-6811(e)(3)(A); *Wetrich*, 307 Kan. at 557. K.S.A. 2019 Supp. 21-5413(a) defines battery—a person offense—as "(1) Knowingly or recklessly causing bodily harm to another person; or (2) knowingly causing physical contact with another person when done in a rude, insulting or angry manner." The Salt Lake City ordinance giving rise to Oliver's conviction defines battery as "any wilful and unlawful use of force or violence upon the person of another." Salt Lake City Municipal Code (S.L.C.M.C.) § 11.08.020. The State acknowledges that, unlike K.S.A. 2019 Supp. 21-5413(a)(1), the Salt Lake City ordinance does not include any requirement that a person's conduct cause bodily harm. Thus, our analysis only compares the ordinance language with K.S.A. 2019 Supp. 21-5413(a)(2)'s requirement that a person "knowingly caus[e] physical contact with another person when done in a rude, insulting or angry manner."

As the district court noted, the mental culpability required by the Salt Lake City ordinance is narrower than our battery statute because a person can commit battery recklessly in Kansas, while one must do so willfully in Salt Lake City—thus requiring a higher level of intent. See K.S.A. 2019 Supp. 21-5413(a)(1); S.L.C.M.C. § 11.08.020.

Oliver acknowledges this difference in intent. But he argues that Utah courts have interpreted the conduct proscribed by the Salt Lake City ordinance to include a broader universe of actions than our Kansas counterpart. For support, he points to the Kansas Supreme Court's decision in *Obregon*, where the court held that although the mental states required by Florida battery statutes were narrower than the mental state required for battery in Kansas, the conduct prohibited by the Florida statute was broader than that prohibited under the Kansas battery offense. 309 Kan. at 1272-73.

As the State points out, a panel of this court has previously considered whether a Nevada battery statute with identical language to the Salt Lake City ordinance was comparable to Kansas' battery statute. See *State v. Williams*, No. 114,778, 2019 WL 406296, at *4 (Kan. App.) (unpublished opinion), *rev. denied* 310 Kan. 1071 (2019). In *Williams*, the panel observed that the Nevada Supreme Court had found the act of intentionally spitting on another was enough to satisfy the use of force or violence element in its state's battery statute. 2019 WL 406296, at *4. The panel reasoned that harmless-but-offensive contact "satisfies the willful and unlawful use of force or violence element of the Nevada battery statute." 2019 WL 406296, at *4. The panel further explained that the defendant "could not have willfully and unlawfully used force or violence upon the person of another, so as to violate the Nevada statute, without touching that person in a rude, insulting, or angry manner, as would violate the Kansas statute." 2019 WL 406296, at *4. Thus, the "elements of the Nevada battery statute, as interpreted by the Nevada Supreme Court, are narrower than or identical to the elements of the Kansas battery statute." 2019 WL 406296, at *4.

Oliver correctly observes that, unlike in *Williams*, there do not appear to be any binding Utah court decisions interpreting the Salt Lake City ordinance. He thus urges this court to steer a different course. In particular, he points to an argument by the defendant in *Salt Lake City v. Newman*, 148 P.3d 931, 933 (Utah 2006), suggesting that the ordinance criminalizes conduct like "spitting and yelling" that may not be a battery in

6

Kansas. But as Oliver acknowledges in his brief, the Utah Supreme Court did not adopt or endorse this view in *Newman*. Instead, the court held that regardless of its precise interpretation and breadth, the ordinance did not impermissibly and unconstitutionally conflict with Utah statutes. 148 P.3d at 934. We find the *Newman* analysis inapposite for purposes of our discussion.

In the absence of any Utah decisions to illuminate our interpretive path, we must examine and compare the universe of conduct governed by the Kansas statute and the Salt Lake City ordinance. Oliver argues that the Salt Lake City ordinance does not limit the use of force or violence against a person to those uses done in a rude, insulting, or angry manner. Oliver posits that "a joking nudge to the arm" could violate the ordinance, as such an action involves a use of force—a physical contact—that is not conducted in a rude, insulting, or angry manner. While we doubt a prosecutor would ever bring charges for such conduct, Oliver is correct that this action meets the technical elements listed in the ordinance.

The State argues that this court should not strain to find conduct that meets the technical elements when the intent of the Salt Lake City ordinance, as the district court found, was to criminalize the rude, insulting, or angry conduct that Kansas defines as a battery. The district court emphasized that the ordinance criminalized "force *or violence*," interpreting this language to show that a nudge would not meet its definition. (Emphasis added.) But we disagree. Using force and using violence are different ways a person may violate the ordinance. Accord *Obregon*, 309 Kan. at 1274-75 (noting that out-of-state statutes are only comparable to Kansas statutes under *Wetrich* when all elements of the out-of-state offense are narrower than or identical to the Kansas offense).

And an act can be committed forcefully upon another person without being done in a rude, insulting, or angry manner. For example, a bar patron attempting to neutralize a potential altercation may place their hands on the chest of another to back the person up

and diffuse a situation. That physical contact might be done assertively—that is, with force—but would not be conducted in a rude, insulting, or angry manner. Or a person may engage in imperfect self-defense—physically using force to push someone away to protect themselves or others. Even if that act was unjustified, it would be done out of fright or alarm, not in a rude, insulting, or angry manner. Each of these contexts would definitionally fall within the Salt Lake City ordinance's prohibition against the "use of force or violence upon the person of another" but would not be a Kansas battery under K.S.A. 2019 Supp. 21-5413(a)(2). S.L.C.M.C. § 11.08.020.

Because the Salt Lake City ordinance encompasses a broader range of conduct than the Kansas battery statute, it was incumbent upon the State to demonstrate at sentencing that Oliver's conduct that gave rise to the 1992 violation of the Salt Lake City ordinance would be considered a battery under Kansas law. See *Obregon*, 309 Kan. at 1275 (holding that "when the crime in question is an out-of-state offense with alternative means—some of which would not be comparable to Kansas person crimes—the State's burden is to establish that the defendant committed a version of the offense supporting the person classification"). But the State offered no such evidence at sentencing. It only relied on logic and the language of the two provisions.

In its brief, the State argues emphatically that *Wetrich* was wrongly decided and its analysis provides an inaccurate assessment of whether an out-of-state misdemeanor is comparable to a Kansas offense. But the Kansas Court of Appeals is duty bound to follow Kansas Supreme Court precedent unless there is some indication that the Supreme Court is departing from its previous position. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022). The Supreme Court has given no indication that it is deviating from the *Wetrich* framework in this context, and we are bound to follow its caselaw.

In sum, we agree with Oliver that the district court erred in finding that the Salt Lake City ordinance giving rise to Oliver's previous misdemeanor battery conviction is

comparable to the Kansas battery statute. The actions described in that ordinance encompass conduct that would not be considered a battery in this state. The court therefore erred in classifying that offense as a person crime for criminal-history purposes. We vacate Oliver's sentence and remand for resentencing with directions that Oliver's 1992 ordinance violation be classified as a nonperson offense, which will result in a criminal-history score of C.

Vacated and remanded with directions.